James E. Cecchi
Kevin G. Cooper
Brian F. O'Toole
Jordan M. Steele
CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
973-994-1700
jcecchi@carellabyrne.com
kcooper@carellabyrne.com
botoole@carellabyrne.com
jsteele@carellabyrne.com

*Counsel for Plaintiff
and the Proposed Class*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATTHEW M. GUINEY, ON BEHALF OF E.G., HIS MINOR CHILD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | Case No.  2:23-cv-3905<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Matthew M. Guiney, on behalf of E.G., his minor child ("Plaintiff"), on behalf of himself and all others similarly situated, alleges the following based on personal knowledge as to allegations regarding himself and on information and belief, and the investigation of counsel, as to all other allegations.

## INTRODUCTION

1. Plaintiff brings this action on behalf of himself and class of all similarly situated consumers against Defendant Bank of America, N.A. ("Bank of America" or "Defendant"), arising

from its unfair, deceptive, and unlawful practice of misleading personal accountholders into paying undisclosed fees on incoming wire transfers ("Incoming Wire Transfer Fee").

2. Bank of America conceals and omits the fact it charges Incoming Wire Transfer Fees on New Jersey personal accountholders when they receive funds to their accounts via domestic wire in the amount of $15, and a $35 fee for international wires.

3. Plaintiff and similarly situated personal accountholders are shocked when – after no warning and no disclosure – they are assessed Incoming Wire Transfer Fees after receiving wire deposits into their accounts. Plaintiff and others like him were charged fees for incoming wires when they had no opportunity to review, limit, or avoid the fee.

4. Among major U.S. banks, Bank of America is an outlier in hiding the existence and amount of Incoming Wire Transfer Fees from its personal accountholders. Incoming Wire Transfer Fees are prototypical "junk" fees: unavoidable and hidden, tacked on after the opportunity for any meaningful consumer choice has passed, and deducted directly from consumer accounts without consent or notice.

5. This activity follows a pattern of unlawful behavior conducted by Bank of America. On July 11, 2023, the Consumer Financial Protection Bureau ("CFPB") ordered Bank of America to pay more than $100 million to customers for systematically double-dipping on fees imposed on customers. In so doing, the CFPB found that Bank of America harmed hundreds of thousands of consumers over a period of several years and across multiple product lines and services. CFPB Director Rohit Chopra stated: "[t]hese practices are illegal and undermine customer trust."[1]

---

[1] *CFPB Takes Action Against Bank of America for Illegally Charging Junk Fees, Withholding Credit Card Rewards, and Opening Fake Accounts*, CONSUMER FINANCIAL PROTECTION BUREAU (July 11, 2023), available at: https://www.consumerfinance.gov/about-us/newsroom/bank-of-america-for-illegally-charging-junk-fees-withholding-credit-card-rewards-opening-fake-accounts/.

6. Plaintiff, on behalf of himself and the Class (defined below), seeks to end Bank of America's deceptive practices and force it to refund improper Incoming Wire Transfer Fees. Plaintiff seeks damages, restitution, and injunctive relief on a classwide basis, as set forth more fully below.

## JURISDICTION AND VENUE

7. The aggregate amount in controversy exceeds $5 million (exclusive of interest and costs), and at least one class member (as well as the Plaintiffs themselves) belongs to a different state than that of Defendant; hence there is at least minimal diversity between the parties. In addition, there are well over 100 plaintiffs in the expected Class. Therefore, jurisdiction is present under 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005 (CAFA).

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(d) and 15 U.S.C. §§ 15 and 22 because Defendant conducts business in this District and is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. Defendant's contacts with this District are also sufficient to subject it to personal jurisdiction.

9. Defendant is registered to do business in New Jersey, maintains over one hundred branches in New Jersey, and each class member was harmed in New Jersey by Bank of America's conduct.

10. Furthermore, according to Defendant's Deposit Agreement and Disclosures, "any action or proceeding regarding your account or this deposit agreement must be brought in the state in which the financial center that maintains your account is located."

## PARTIES

11. Plaintiff is a citizen and resident of Maplewood, New Jersey. Plaintiff maintains a personal bank account at Bank of America. Plaintiff opened a bank account at a branch in New Jersey. Plaintiff was not informed at the time of opening their account that they would be subject

to an Incoming Wire Transfer Fee. Had Plaintiff been informed of the Incoming Wire Transfer Fee, Plaintiff would have arranged another means of transferring payment.

12. Defendant Bank of America is a Delaware company and a national bank with its headquarters and principal place of business in Charlotte, North Carolina. Among other things, Bank of America is in the business of providing retail banking services to consumers, including Plaintiff and members of the putative class.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.   Bank of America's Account Documents Promise to Fully Disclose All Fees Charged on Accounts, But Never Disclose the Amount of Incoming Wire Transfer Fees**

13. The relevant documents Plaintiff received when opening his account are the Deposit Agreement and Disclosures (Ex. 1), Personal Schedule of Fees (Ex. 2), Online Banking Agreement (Ex. 3), and Wire Transfers FAQs (Ex. 4) (collectively, the "Account Documents").

14. Bank of America's Personal Schedule of Fees expressly promises to "list[] the fees associated with your account and ways to avoid them when applicable." Ex. 2 at 2 (emphasis added).

15. The Deposit Agreement repeatedly makes this same promise:

- "The *Schedule of Fees* lists our accounts and account fees." Ex. 1, at 2 (emphasis in original).

- "The *Personal Schedule of Fees* describes our personal accounts and lists applicable fees." *Id.* at 10.

- **"Account Fees** Your account is subject to the fees described in the *Schedule of Fees* that applies to your account. . . . The *Personal Schedule of Fees* lists account fees that apply to your personal deposit accounts. . . . The schedule that applies to your account is part of the binding contract between you and us." *Id.* at 17.

16. This promise – that Bank of America will only charge fees only after it warns consumers – is required by federal law. *See* 12 CFR § 1030.4 ("[t]he amount of any fee that may

4

be imposed in connection with the account (or an explanation of how the fee will be determined) and the conditions under which the fee may be imposed.").

17. Despite promising to disclose all fees and being statutorily bound to do so, none of the Account Documents ever disclose the amount of the Incoming Wire Transfer Fees.

18. Because Bank of America expressly promised it would disclose all fees it would charge, and because it failed to disclose the Incoming Wire Transfer Fees in any document, it was not permitted to charge such fees.

**II.   Bank of America's Account Documents Do Not Disclose Wire Transfer Fees on Incoming Wires**

19. With respect to fees for wire transfers, the Personal Schedule of Fees states: "Wire Transfers, Incoming or Outgoing . . . Fee varies . . .We may change the fees for wire transfers and drafts at any time. Visit a financial center or call us at the number on your statement for current fees." Ex. 2 at 14.

20. The Personal Schedule of Fees nowhere states the amount of such a fee for an incoming wire or the circumstances in which such fees will be charged.

21. Accordingly, the Personal Schedule of Fees did not inform Plaintiff that Bank of America would assess Incoming Wire Transfer Fees.

22. Moreover, while the documents inform Plaintiff that Bank of America will charge *outbound* transfer fees, there is no mention of Incoming Transfer Fees, much less a $15 or $35 fee.

23. The Online Banking Agreement lists all forms of "ACH and Wire transfers" and the fees associated with such fees. Tellingly, no fee for *incoming* wire transfers is listed at all – indeed, incoming wire transfers are nowhere included in the supposedly all-inclusive list of fees for sending and receiving "ACH and Wire transfers." Ex. 3 at 14-15.

24. The Wire Transfer FAQ is similarly silent on the $15 and $35 Incoming Transfer Fees:

Q: Are there fees and limits for domestic and international wire transfers?

A: **Fees and limits may apply, depending on your account type and the type of wire. You will be able to review any fees and limits before completing your wire transfer in Online Banking. Latest transfer limits are also available in our Online Banking service agreement.** For Remittance Transfers, we're required by law to inform you of the exact fees you will incur for international wires, including fees from other banks. For some requests, we won't have the exact fees from other banks and therefore will not be able to process it. If your request was in US dollars, you may try again in foreign currency – this may help us determine the exact fees incurred for this transaction and enable us to send the wire request successfully.

Ex. 4 (emphasis added).

25. Bank of America has obscured and hidden the presence and amount of its Incoming Wire Transfer Fees because Incoming Wire Transfer Fees are a source of income for Bank of America and because consumers assessed such fees have no control over them. Bank of America has hidden these fees in hopes that customers will not notice them or simply acquiesce, so that it can continue pocketing these Incoming Wire Fees.

26. As testified to by a senior advisor for the Consumer Financial Protection Bureau, "Companies have become adept at hiding the true price of their products by funneling more and more costs into junk fees. As a result, consumers are often enticed to pay more for a product than they expected or planned. And because junk fees are an easy way to inflate prices and maximize profits, companies have a strong incentive to innovate new fees rather than to compete on price and quality."[2]

---

[2] Testimony of CFPB Senior Advisor Brian Shearer on Junk Fees Before the Pennsylvania House of Representatives Consumer Protection, Technology, and Utilities Committee (Apr. 13, 2023), available at https://www.consumerfinance.gov/about-us/newsroom/testimony-cfpb-senior-advisor-brian-shearer-junk-fees-pennsylvania-house-of-representatives-consumer-protection-technology-utilities-committee/.

27. Bank of America never discloses the existence or amount of such fees in the Account Documents, instead its requires consumers to call and ask if or when these fees will be charged and the amount of such fees.

28. Fee disclosures are important to reasonable consumers like Plaintiff. Bank of America's Incoming Wire Fee Disclosures are misleading and incomplete, as they fail to inform customers of the $15 fee and imply that fees may not be charged on incoming wire transfers.

29. Bank of America is an outlier in the industry in hiding the existence and amount of Incoming Wire Transfer Fees from its personal accountholders. Numerous other banks that assess an Incoming Wire Transfer Fee disclose both its existence and the amount. For instance, Wells Fargo's account documents clearly disclose a $15 incoming domestic wire fee.

30. Most other major banks offer similar disclosures, including TD Bank,[3] PNC Bank,[4] Union Bank,[5] and US Bank.[6]

31. The assessment of unavoidable and undisclosed fees is by definition deceptive. Indeed, the Consumer Financial Protection Bureau calls these "junk fees" and defines them as follows:

> Exploitative junk fees charged by banks and non-bank financial institutions have become widespread, with the potential effect of shielding substantial portions of the true price of consumer financial products and services from competition. The CFPB is concerned about fees that far exceed the marginal cost of the service they purport to cover, implying that companies are not just shifting costs to consumers, but rather, taking advantage of a captive relationship with the consumer to drive excess profits. Excessive and exploitative fees, whether predictable and transparent

---

[3] https://www.feeds.td.com/en/document/oao/pdf/1 _ fees.pdf.
[4] https://www.pnc.com/ content/ darn/pnc-com/pdf/personal/Checking/service-charges-standardchecking-A.pdf.
[5] https://assets.union bank.com/assets/file/personal/disclosures/fee-schedule-consumer.pdf.
[6] https://www.usbank.com/darn/documents/pdf/deposits/consumer-pricing-information/depositproducts.pdf (accessed March 2, 2023).

to the customer or not, can add up and pose significant costs to people, especially those with low wealth and income.[7]

32. Bank of America's Incoming Wire Transfer Fees are an especially problematic junk fee because an accountholder does not affirmatively do anything or request a service when it receives an inbound wire.

33. For this reason, many financial institutions refuse to charge such fees at all, at least for domestic transfers. Financial institutions that do not charge such fees include, *inter alia*, Capital One, USAA FSB, Ally Bank, Alliant Credit Union, Charles Schwab, Discover, Fidelity, Synchrony, and Village Bank.

### III. Plaintiff Was Injured by the Hidden Wire Transfer Fees

34. Plaintiff maintains a checking account with Bank of America in New Jersey.

35. On September 2, 2021, Plaintiff received an incoming wire transfer of $10 for his allowance.

36. To Plaintiff's surprise, and contrary to Bank of America's promises and representations, he was charged an Incoming Wire Transfer Fee of $15 for that incoming wire transfer without the opportunity to review, let alone choose, whether or not he wanted to incur the fee.

37. Nowhere in Plaintiff's agreement was this fee disclosed.

### CLASS ALLEGATIONS

38. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements.

---

[7] Request for Information Regarding Fees Imposed by Providers of Consumer Financial Products or Services, Federal Register Vol. 87, No. 22 (February 2, 2022) (accessed online, https://www.govinfo.gov/content/pkg/FR-2022-02-02/pdf/2022-02071.pdf.)

39. The proposed "Class" is defined as:

All Bank of America personal accountholders with New Jersey-based accounts who, during the applicable statute of limitations through the date of class certification, were charged an Incoming Wire Transfer Fee.

40. Plaintiff reserves the right to modify or amend the definition of the Class before the Court determines whether certification is appropriate.

41. Excluded from the Class are Bank of America, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Bank of America has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

42. The members of the Class are so numerous that joinder is impractical. The Class consists of at least hundreds of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Bank of America's records.

43. The claims of the representative Plaintiff are typical of the claims of the Class he seeks to represent in that the representative Plaintiff, like all members of the Class, he was charged improper and deceptive fees as alleged herein. The representative Plaintiff, like all members of the Class, was damaged by Bank of America's misconduct in that he was assessed deceptive an Incoming Wire Transfer Fee. Furthermore, the factual basis of Bank of America's misconduct is common to all members of the Class and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class. And Bank of America has no unique defenses that would apply to Plaintiff and not the Class.

44. Among the questions of law and fact common to the Class include the following:

    a. Whether Bank of America violated the NJCFA by charging Incoming Wire Transfer Fees, and whether its conduct was deceptive;

    b. The proper method or methods by which to measure damages and/or

      restitution and/or disgorgement; and

  c.  Whether Plaintiff and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

  45.  Plaintiff's claims are typical of the claims of other members of the Class, in that they arise out of the same wrongful Bank of America Incoming Wire Transfer Fees policies and practices. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Class.

  46.  Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

  47.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual member of the Class's claim is small relative to the complexity of the litigation, and due to the financial resources of Bank of America, no member of the Class could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Bank of America's misconduct will proceed without remedy.

  48.  Even if members of the Class themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a

single court.

49. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

50. Bank of America has acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

51. All conditions precedent to bringing this action have been satisfied and/or waived.

### CLAIM I
### New Jersey Consumer Fraud Act
### N.J. Stat. Ann. §§ 56:8-1, *et seq.*
### (On Behalf of Plaintiff and the Class)

50. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

51. Plaintiff brings this claim pursuant to the NJCFA. The NJCFA (N.J.S.A. 56:8-2, *et seq.*), prohibits any person from engaging in unconscionable or abusive deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact in connection with the sale or lease of any merchandise.

52. The NJCFA was intended to be "one of the strongest consumer protection consumer laws in the nation." Governor's Press Release for Assembly Bill No. 2402, at 1 (June 29, 1971). In recognizing this intent, courts have consistently construed the statute liberally in order to further its broad remedial purpose.

53. Plaintiff and the Class members are "consumers" within the meaning of the NJCFA. The banking services that Plaintiff and the Class obtained from Bank of America fit within the definition of "services" set forth in the NJCFA.

54. Bank of America has engaged in fraudulent, deceptive, and unconscionable commercial practices in violation of the NJCFA by charging the undisclosed Incoming Wire Transfer Fees as described above.

55. The Incoming Wire Transfer Fees are fraudulent and deceptive because they are not disclosed in any of the Account Documents and, unless affirmatively sought out by a customer, will only be discovered after they are charged. Furthermore, because the charges are incurred in response to an incoming wire transfer that a customer has no control over and may not have any knowledge of, Bank of America's failure to properly disclose the Incoming Wire Fees is ever more deceptive. These fees also constitute an unconscionable commercial practice under the NJCFA as the lack of disclosure and lack of an opportunity to avoid these fees evidences a lack of good faith, honesty in fact, and observance of fair dealing.

56. Plaintiff and Class members have suffered an ascertainable loss of money and/or property as a result of Bank of America's deceptive misconduct, misrepresentations, and omissions.

57. Accordingly, Plaintiff and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under N.J.S.A. 56:8-1, *et seq.*

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

1. Declaring Bank of America's Incoming Wire Transfer Fees policies and practices to be wrongful, unfair, and unconscionable;

2. Restitution of all Incoming Wire Transfer Fees paid to Bank of America by Plaintiff

and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

3. Disgorgement of the ill-gotten gains derived by Bank of America from its misconduct;

4. Actual damages in an amount according to proof;

5. Punitive and exemplary damages;

6. Pre-judgment interest at the maximum rate permitted by applicable law;

7. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Dated: July 21, 2023

Respectfully Submitted,

CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, P.C.

/s/James E. Cecchi

James E. Cecchi
Kevin G. Cooper
Brian F. O'Toole
Jordan M. Steele
CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
973-994-1700
jcecchi@carellabyrne.com
kcooper@carellabyrne.com
botoole@carellabyrne.com
jsteele@carellabyrne.com

*Counsel for Plaintiff
and the Proposed Class*